IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID SILVER

       Plaintiff,

vs.                                  No. CIV 09-0510 JB/ACT

MATTHEW A. BROWN, GROWTH
TECHNOLOGIES INTERNATIONAL, INC.
and JACK MCMULLEN

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) the Defendants' Motion to Dismiss for Lack

of Personal Jurisdiction or, Alternatively to Transfer Venue, filed June 22, 2009 (Doc. 6); (ii)

Plaintiff's Motion for Summary Judgment, filed July 13, 2009 (Doc. 11); (iii) Plaintiff's Writ of

Precipae [sic], filed August 4, 2009 (Doc. 17); (iv) Motion to Impose Sanctions on Defendants and

Opposing Counsel, filed September 15, 2009 (Doc. 19); (v) Motion for Preliminary Injunction, filed

September 24, 2009 (Doc. 22); and (vi) Motion to Add an Additional Defendant to the Complaint,

filed September 22, 2009 (Doc. 23).  The Court held a hearing on November 9, 2009.  Plaintiff

David Silver is representing himself pro se.  The primary issues are: (i) whether the Defendants have

been properly served with process; (ii) whether the Court has personal jurisdiction over the

Defendants; (iii) whether the Plaintiff has standing; and (iv) whether Defendants and their counsel

should be sanctioned for not agreeing to having the matter heard by a Magistrate Judge.  The

Defendants have not been properly served with process, and the Court does not have personal

jurisdiction over the individual Defendants.  Furthermore, Plaintiff does not have standing to bring

the breach-of-contract claim, and he cannot represent his corporation Northern Hills, Inc., d/b/a Santa Fe Capital Group ("Santa Fe Capital Group"), and the Court will deny the claims against Defendant Growth Technologies International, Inc. ("GTI").  The Court will grant the motion to dismiss in part and deny it in part, and deny the motion for summary judgment, the writ of praecipe and the motion for sanctions.  The Complaint will be dismissed without prejudice.  The remaining motions will be denied as moot.

## **FACTUAL BACKGROUND**

Silver is a resident of the state of New Mexico.  See Complaint ¶1, at 1, filed May 26, 2009 (Doc. 1).  Defendants Matthew A. Brown and Jack McMullen are citizens of the state of Florida. See id. ¶ 2, at 1.  Defendant GTI is a corporation domiciled in the state of Florida.  See id.

On December 16, 2008, Northern Hills, Inc., d/b/a Santa Fe Capital Group ("Santa Fe Capital Group"), and GTI entered into an Investment Banking Agreement ("Agreement") whereby Santa Fe Capital Group agreed to assist in raising angel capital[1] for GTI in exchange for three monthly payments of $1,250.00 and 100,000 shares of GTI common stock.  See Complaint ¶¶ 6-7, at 2.  GTI made the required payments to Santa Fe Capital Group.  See id. ¶¶ 6-8, at 2.  McMullen sent two

---

[1] Silver described angel capital as follows:

> Silver set up the angel capital club of New Mexico in 1981.  The idea was that wealthy people would attend a dinner.  During that dinner, there would be presentations by entrepreneurs.  Silver would screen the presenters and each presenter had five minutes to present its business plan.  Then, the angels, i.e., the wealthy people, would meet with those entrepreneurs whose ideas they liked for lunch in the next few days or weeks.  If the angels then still liked the idea, they would provide capital to the entrepreneur.

See Transcript of Hearing at 15:22-16:11 (taken November 9, 2009)("Tr.")(Silver).

of the payments.[2]  Doc. 9 at 12-13.  Despite repeated requests from Santa Fe Capital Group, GTI did not provide to Santa Fe Capital Group the 100,000 shares of GTI common stock or pay all of the expense reimbursements that the Agreement required.  See Complaint ¶¶ 9-10, at 1.  In furtherance of the Agreement, Silver wrote several versions of a Funding Memorandum[3] for GTI, with GTI's input.  See Complaint ¶ 12, at 2.  In April 2009, Silver submitted the final version of the Funding Memorandum to investors to determine their interest in providing capital to GTI.  See id. ¶ 13, at 2.  The investors were not interested in funding GTI.  See id. ¶ 14, at 3.  Believing that Santa Fe Capital Group was not performing under the Agreement, the Defendants demanded Santa Fe Capital Group return $6,000.00.  See Complaint ¶ 14, at 3.  On or about May 5, 2009, the Defendants posted a blog on the internet entitled "A Special Report on David Silver and the Santa Fe Capital Group."  Complaint ¶ 17, at 3.  The blog contains untrue statements about Silver and Santa Fe Capital Group.  See Complaint ¶ 17, at 3.  One client of Santa Fe Capital Group terminated her contract after reading the blog.  See Complaint ¶ 17, at 3.  Silver asked the Defendants to remove the blog, but they refused.  See Complaint ¶ 19, at 3.  The blog allegedly injured Silver.  See Complaint ¶17, at 3.

## PROCEDURAL BACKGROUND

On May 26, 2009, Silver filed his Complaint.  See Doc. 1.  Silver alleges breach of contract (Count 1), wire fraud (Count 2), slander and defamation of character (Count 3), and duress (Count 4).  See Complaint ¶¶ 21-28, at 4-5.  On June 22, 2009, the Defendants filed Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively to Transfer Venue (Doc. 6), and their

_____

[2] The two checks were written from the account of Andros Associates, Inc. and signed by McMullen.  See Doc. 9 at 12-13.

[3]A Funding Memorandum is a 15-20 page document about an entrepreneur's proposed project, including projections, that Silver provides to the investors for consideration.  See Tr. at 18:14-16 (Silver).

Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue (Doc. 7).

In their motion, the Defendants assert that dismissal is appropriate under rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and that transfer is appropriate under 28 U.S.C. § 1404(a). See Motion To Dismiss at 1. The Defendants contend that they are not subject to the Court's personal jurisdiction. See Motion to Dismiss at 1. In the alternative, the Defendants ask the Court to transfer the case to the United States District Court for the Southern District of Florida, Miami Division. See id. at 1.

In the memorandum, the Defendants assert that they do not have the minimum contacts with New Mexico required to provide personal jurisdiction or to support a finding of proper venue. See Memorandum at 1. The Defendants contend that McMullen did not execute the Agreement and was not a party to the Agreement. See id. at 2. They argue that the "fiduciary shield doctrine" protects Brown because Brown acted as representative of the corporation and not individually with regard to the Agreement. See Memorandum at 2.

The Defendants further contend that New Mexico's long-arm statute does not permit jurisdiction over them, and that their contacts with New Mexico are insufficient to support general jurisdiction or specific jurisdiction. See Memorandum at 3-5. The Defendants also assert that, even if they have the necessary minimum contacts with New Mexico, the exercise of personal jurisdiction would be unreasonable. See id. at 7-9. Additionally, the Defendants argue that Silver does not have standing to bring claims on behalf of Santa Fe Capital Group. See id. at 9. Lastly, the Defendants assert that the arbitration clause in the Agreement is binding upon the parties and, if the Court does not believe that it should dismiss the matter, suggest that the proper venue for this matter would be the Southern District of Florida, Miami Division. See Memorandum at 10-12.

On June 30, 2009, Silver filed his Response to Defendant's Motion to Dismiss or Alternatively to Transfer Venue and Plaintiff's Motion for Summary Judgment. See Doc. 9. Silver contends that the Defendants' motion was filed untimely, that the Defendants are in default for failure to timely file their answer, and that, therefore, Silver is entitled to summary judgment on his claims. See Response to Motion to Dismiss ¶ 6, at 3. Silver further asserts that New Mexico is the proper jurisdiction for this case as all events surrounding the claims occurred there. See Response to Motion to Dismiss ¶ 9, at 8.

On July 13, 2009, Silver filed Plaintiff's Motion for Summary Judgment (Doc. 11), asserting that the Defendants did not timely file their motion to dismiss or an answer and, that, therefore, the Court must grant him summary judgment. See Motion for SJ ¶¶ 4, 6, at 2. In answer to the motion, on July 27, 2009, the Defendants filed the Defendants' Response and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. See Doc. 14. The Defendants dispute some of the facts presented in Silver's motion, including the dates of service upon the Defendants and the contents of the subpoenas. See Response SJ ¶ 1-9, at 1-2. The Defendants further contend that their motion to dismiss was timely filed. See Response SJ at 4.

Also, on July 27, 2009, the Defendants filed the Defendants' Reply to Plaintiff's Response (Docket 5) to Defendants' Motion to Dismiss or Alternatively to Transfer Venue (Docket 2). See Doc. 15. The Defendants reiterated that the subpoenas do not conform to rule 4 as effective service and, accordingly, that Silver's argument regarding the timeliness of the Defendants' motion to dismiss fails. See Reply to Dismiss at 1. Specifically, the Defendants assert that the subpoenas do not contain the time within which the Defendants had to appear and to defend, and did not notify them that, as a result of their failure to appear and defend, a default judgment might result. See id. at 2. Further, the clerk did not sign the subpoenas and the subpoenas did not contain the court seal.

The Defendants contend that they filed their motion within twenty days of being served by Silver. <u>See</u> Reply to Dismiss at 1.

The Defendants argue that Silver does not describe the minimum contacts that they have with the state of New Mexico which are necessary to confer personal jurisdiction and venue. <u>See</u> <u>id.</u> at 2. The Defendants assert that, even if jurisdiction and venue would be proper in New Mexico, the arbitration clause contained in the Agreement supports transfer of the matter to Florida. <u>See</u> Reply to Dismiss at 2.

The Defendants further contend that Silver did not address their argument that he lacks standing to pursue a breach-of-contract claim regarding the Agreement. <u>See</u> Reply to Dismiss at 2. They assert that Silver is in blatant disregard of the Court's rules which state that an attorney must represent a corporation. <u>See</u> Reply to Dismiss at 2. The Defendants argue that Silver's tort claims are included in the "any dispute" language of the arbitration clause, and, therefore, choice-of-venue provisions are applicable to them, too. Reply to Dismiss at 7. The Defendants ask the Court to dismiss the Complaint with prejudice. <u>See</u> Reply to Dismiss at 9.

On August 4, 2009, Silver filed Plaintiff's Writ of Precipae [sic] (Doc. 17), which requests that the Court grant a default judgment against the Defendants. The Defendants filed Defendants' Response to Writ of Praecipe on August 11, 2009 (Doc. 18), stating that Silver's writ of praecipe is inappropriate, is hard to interpret and, possibly, is a reply to Defendants' response to Silver's motion for summary judgment.

On September 15, 2009, Silver filed a Motion to Impose Sanctions on Defendants and Opposing Counsel. <u>See</u> Doc. 19. Silver asserts that, under rule 11(a) and (b)(2), sanctions are appropriate because the Defendants failed to consent to have the case heard by a Magistrate Judge. On September 28, 2009, the Defendants filed Defendants' Response to Motion to Impose Sanctions

on Defendants and Opposing Counsel (Doc. 21), arguing that rule 73(2) grants a party the freedom to withhold consent to a Magistrate Judge "without adverse substantive consequences."   The Defendants request that the Court deny the motion and, pursuant to rule 11(c)(2), award them their reasonable expenses, including attorney's fees, incurred in defending against Silver's motion for sanctions.

On September 22, 2009, Silver filed a Motion to Add an Additional Defendant to the Complaint (Doc. 23), requesting to add Michael Dean[4] as a defendant to the case because he "believes that Michael Dean aided and abetted the disparagement of Plaintiff, and did nothing to have the blog taken down."   Motion to Add at 1.   On October 5, 2009, the Defendants filed Defendants' Response to Motion [sic] Add an Additional Defendant to the Complaint (Doc. 24), requesting the Court to deny the motion because of the lack of information regarding Michael Dean. See Response to Motion to Add at 2-3.

On September 24, 2009, Silver filed a Motion for Preliminary Injunction (Doc. 22), seeking an order from the Court requiring the Defendants to remove the blog and preventing the Defendants from publishing a different blog until this case is decided on the merits.   On October 8, 2009, the Defendants filed Defendants' Response to Motion for Preliminary Injunction (Doc. 25), asserting that Silver has not shown the elements necessary to obtain a preliminary injunction, and, therefore, the Court should deny Silver's motion.

The Court held a hearing on this matter on November 9, 2009.[5]   At that hearing, Silver

---

[4] Silver provided no information identifying who Michael Dean is, how he was involved with the blog, or why he should be added to the Complaint.

[5] At the hearing, Silver asserted several new claims, such as blackmail, cyber-terrorism, and kidnaping.   See Tr. at 14:10 (Silver); see id. at 23:4-5 (Silver).   Silver did not assert these claims in the Complaint, and the Court will not, therefore, consider them on this motion.

asserted the following as reasons that the Defendants had continuous and systematic contacts with

New Mexico:

i.  A finder[6] contacted Silver regarding the Defendants' project.  Silver told the finder to have the Defendants call him.  To initiate the relationship between Silver and the Defendants, the Defendants called Silver in New Mexico in November 2008 to solicit his help in raising capital for their venture.  Brown called Silver.

ii.  An angry investor in GTI called Silver.  Brown then called Silver to apologize for the investor's call.

iii.  The Defendants solicited Silver to raise money for GTI.  They sent two copies of the company brochure and business plan to Silver in New Mexico.  The business plan was about a hundred pages, very glossy, and thicker than the usual business plan.

iv.  The Defendants called Silver in New Mexico numerous times to discuss the business model.  Silver liked only one of the two business plans that the Defendants proposed.  Silver wanted them to remove one of the plans.  Silver talked with the Defendants about a dozen times over the telephone to redesign the business plan.

v.  Silver drafted the Agreement in New Mexico.

vi.  Silver signed the Agreement in New Mexico, and the Defendants then signed the Agreement in Florida, and sent it by facsimile transmission back to New Mexico.

vii.  There were numerous telephone calls and electronic mail transmissions between Silver and the Defendants to change the funding memorandum into a form Silver believed would attract angel capital.

viii.  The Defendants sent three retainer checks to Silver.  Two of the checks came from McMullen.

ix.  The Defendants promised in the contract to send Silver 100,000 shares of its common stock.  The stock was never sent.

---

[6]At the hearing, Silver described a finder as a person "who finds me to find money."  He stated "somebody breaking into the business would call me and then I would share a fee with that person."

x.      The Defendants' selling of the shares to Silver for services to ensure Silver's engagement in their business going forward was similar to the case of Capco Acquisub, Inc. v. Greka Energy Corp., 145 N.M. 328, 198 P.3d 354 (Ct. App. 2008), wherein the court found sufficient contacts with New Mexico and personal jurisdiction.

xi.     The Defendants sent due-diligence materials to Silver in New Mexico.

xii.    The Defendants edited the angel Funding Memorandum three times and sent the changes back to New Mexico three times.

xiii.   From New Mexico, Silver then sent the Funding Memorandum to about a dozen angel investors.  Silver then recommended that Brown contact eight of them.

xiv.    McMullen telephoned Silver in February 2009, approximately two weeks before the Defendants purchased the domain name "DavidSilverSantaFe.com" and asked Silver to send him a copy of Silver's most recent book on social media.  Silver sent McMullen the book for free.  McMullen emailed Silver a thank you.

xv.     The Defendants purchased the domain name "DavidSilverSantaFe.com" through Domains by Proxy, Inc. on March 9, 2009.[7]  Domains by Proxy, Inc. is based in Scottsdale, Arizona.  At the time of the purchase, the parties were still trying to raise money.

xvi.    The domain name bears the name of a New Mexico resident, Silver, a corporation "Santa Fe Capital," and a New Mexico city "Santa Fe."

xvii.   The Defendants sent numerous collection letters to Silver asking for the $6,000.00 back and stating they would publish a negative blog that would never come down.  The actual amount was $3,750.00, not $6,000.00.

xviii.  When Silver did not return the $3,750.00, the Defendants published a blog.

xix.    There are six hundred million internet connections in the United States and three times that number worldwide.  There are roughly two million people with access in New Mexico.  The blog was published in New Mexico and seen by New Mexicans, damaging Silver's reputation.

--------

[7]Silver stated later in the hearing that the Defendants purchased the domain on March 11, 2009.  The document provided to the Court at the hearing shows that the domain was created on March 11, 2009.

xx.     Blogs can be seen on mobile phones, and mobile phone owners can send a message to a blog, which increases the number of New Mexicans who saw the defamatory blog.

See Transcript of Hearing at 14:11-27:14 (taken November 9, 2009)("Tr.")(Silver, Court).[8]  Silver acknowledged that some of these facts are new to the Court and were not contained in his submitted pleadings.

## **RULE 4**

"Effectuation of service is a precondition to suit." Jenkins v. City of Topeka, 136 F.3d 1274, 1275 (10th Cir. 1998).  The burden of establishing validity of service of process is on the plaintiff.  See Fed. Deposit Ins. Corp. v. Oaklawn Apts., 959 F.2d 170, 174 (10th Cir. 1992).  The litigant's burden of ensuring effective service is not relieved by his pro se status.  See Jones v. Frank, 973 F.2d 872, 872-874 ( 10th Cir. 1992); Systems Signs Supplies v. United States Department of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)(citing Kersh v. Derozier, 851 F.2d 1509, 1512 (5th Cir. 1988)).

Rule 4 sets forth the requirements for service of process, including the required contents of a summons.  Specifically, rule 4 states that a summons must:

(A) name the court and the parties;

(B) be directed to the defendant;

(C) state the name and address of the plaintiff's attorney or – if unrepresented – of the plaintiff;

(D) state the time within which the defendant must appear and defend;

(E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;

(F) be signed by the clerk; and

---

[8] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

(G) bear the court's seal.

Fed. R. Civ. P. 4(a).  The plaintiff is responsible for presenting the summons to the clerk for signature and seal and ensuring a summons, or a copy of a summons, if there are multiple defendants, is issued for each defendant and is served upon each defendant with a copy of the complaint.  See Fed. R. Civ. P. 4(b), (c).

"Fed. R. Civ. P. 55(a) provides for the entry of default judgment in certain circumstances, including a party who fails to plead or otherwise defend as provided by these rules.  However, the operative rule for responding to a Complaint, namely Fed. R. Civ. P. 12(a)(1), provides that the defendant shall file their answer within twenty (20) days after being served with the Summons and Complaint."  Schroeder v. Kochanowski, 311 F.Supp.2d 1241, 1261 (D. Kan. 2004).  The timing for the filing of a motion to dismiss, or other responsive pleading, is the same as an answer.  Schroeder v. Kochanowski, 311 F.Supp.2d at 1261.  A motion for default judgment is meritless, however, when the defendants were never properly served.  See Schroeder v. Kochanowski, 311 F.Supp.2d at 1261.  Service that succeeds in providing a defendant with actual notice of a lawsuit, but fails to satisfy rule 4's technical requirements, will not permit the court to render a personal judgment against the defendant absent a waiver of the defective service.  See Friedman v. Estate of Presser, 929 F.2d 1151, 1155-1156 (6th Cir. 1991)(citing cases).

## 28 U.S.C. § 1391

Venue for a diversity action is determined by 28 U.S.C. § 1391, which states:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at

the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). A defendant's communications directed at the district where venue is sought by the plaintiff may constitute the events or omissions that satisfy the venue requirements of 28 U.S.C. § 1392(a)(2). See Master Tech. Prods., Inc. v. Smith, 181 F.2d 910, 914 (N.D. Ill. 2002)(holding that venue was proper in the Northern District of Illinois where the defendant called and sent confidential agreements to Illinois, even though the defendant was never personally in Illinois); New Life Brokerage Servs. v. Cal-Surance Ass'n, 222 F.Supp.2d 94, 109 (D. Me. 2002)(holding that venue was proper when communications were directed to the District of Maine by the defendant about insurance coverage in a tort and contract suit brought by plaintiff after its insurance claim was not covered under the policy the insurance broker recommended and procured for it); Sacody Techs., Inc. v. Avant, Inc. , 862 F.Supp. 1152, 1157 (S.D.N.Y. 1994)(holding that venue was proper in the Southern District of New York when defendants' dealings with the plaintiff took place over the telephone, and by correspondence and facsimile, in Massachusetts and New York).

> "Certainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. See Continental Am. Corp. v. Camera Controls Corp., 692 F.2d 1309, 1313-14 (10th Cir. 1982). In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards. See Burger King, 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."); see also Anselmi v. Denver Post, Inc., 552 F.2d 316, 323 (10th Cir.), cert. denied, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977); Berrett v. Life Ins. Co. of the Southwest, 623 F.Supp. 946, 950-51 (D. Utah 1985). However, the exercise of jurisdiction depends on the nature of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards. See Nicholas v. Buchanan, 806 F.2d 305, 307 (1st Cir. 1986)(plaintiff's "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail,' without more," did not satisfy due process requirements), cert. denied, 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987); Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985)("ordinarily 'use

> of the mails, telephone, or other international communications simply do not qualify
> as purposeful activity invoking the benefits and protection of the [forum] state'")
> (citation omitted), cert. denied, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187
> (1986); Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir.
> 1982)("use of interstate facilities (telephone, the mail), ... are secondary or ancillary
> factors and cannot alone provide the 'minimum contacts' required by due process").”

Rambo v. American S. Ins. Co., 839 F.2d 1415, 1418-1419 (10th Cir. 1988).

The substantiality requirement of 28 U.S.C. 1391(a)(2) “is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.” Fodor v. Hartman, No. 05-CV-02539-PSF-BNB, 2006 WL 1488894, at *4 (D. Colo. May 30, 2006)(holding that plaintiff's averments that the defendant may have made telephone calls to him in Colorado, or sent him mailings or email relating to unspecified business matters were not substantial, because the court was unable to determine if “these are acts or omissions that give rise to plaintiff's claims, or are merely tangential contacts.”); Myelle v. Am. Cyanamid Co., Nos. CIV. A. 92-5243, CIV. A. 92-6136, CIV. A. 93-323, 1993 WL 93422, at *6 (E.D. Pa. Apr. 1, 1993) (holding that venue was improper in Pennsylvania where the “substantial part of the events giving rise to the claims alleged herein occurred in South Carolina” and those events “ensuing relevant evidence therefrom, irrefutably constitute the crux of plaintiffs' claims.”).

## LAW REGARDING PERSONAL JURISDICTION IN A DIVERSITY ACTION

When a defendant couples a 12(b) motion to dismiss for lack of personal jurisdiction with other issues, the court must first determine the jurisdictional issue.  See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998).  If jurisdiction is lacking, the court cannot render a valid judgment on the merits of the other issues.  See id.  As the United States Court of Appeals for the Second Circuit has explained:

> Not only does logic compel initial consideration of the issue of jurisdiction over the
> defendant – a court without such jurisdiction lacks power to dismiss a complaint for

> failure to state a claim -- but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first.  A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.

Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963).  If a court determines that personal jurisdiction is lacking for some or all of the defendants, all other claims and issues related to those claims brought against those defendants are rendered moot.  See Daugherty v. United States, 73 Fed. App'x 326, 329-30 (10th Cir. 2003)(unpublished).  The court should then dismiss the claims without prejudice on jurisdictional grounds.  See Posner v. Essex Ins. Co., 178 F.3d 1209, 1221 (11th Cir. 1999).  Dismissing the case for lack of personal jurisdiction, therefore, acts as res judicata in courts subject to the same jurisdiction limits, but does not preclude litigation of the merits in a court with jurisdiction.  See id. at 1221.  "The plaintiff bears the burden of establishing personal jurisdiction over the defendant."  Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984).  See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that [(i)] jurisdiction is legitimate under the laws of the forum state and that [(ii)] the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004)(internal quotations omitted).  Accordingly, jurisdiction is appropriate only if (i) a nonresident is subject to the New Mexico personal-jurisdiction law, and (ii) the exercise of personal jurisdiction over a nonresident defendant comports with due process.

### 1.    New Mexico's Long-Arm Statute.

The forum state's law applies in federal diversity actions to determine if personal jurisdiction exists.  See Beardsley v. Farmland Co-Op, Inc., 530 F.3d 1309, 1313 (10th Cir. 2008)(citing Erie

R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  New Mexico's long-arm statute provides:

A.     Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

. . . .

(3) the commission of a tortious act within this state;

. . . .

C.     Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

NMSA (1978), § 38-1-16.  The New Mexico long-arm statute is coextensive with constitutional limitations that the due-process-clause imposes.  See Tercero v. Roman Catholic Diocese, 132 N.M. 312, 316, 48 P.3d 50, 54 (2002).  Thus, if jurisdiction is consistent with the due-process-clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant.  See id.

New Mexico may have jurisdiction over a defendant who "transacts business" in New Mexico within the meaning of N.M.S.A. 1978, § 38-1-16(A)(1).  In Monks Own, Ltd. v. Monastery of Christ In Desert, 142 N.M. 549, 168 P.3d 121 (2007), the Supreme Court of New Mexico explained that "[t]ransaction of any business . . . is defined as doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."  142 N.M. at 556, 168 P.3d at 128 (internal quotations omitted).  The court must look to the facts of each case to determine if the transaction of business category is met.  See id. at 556, 168 P.3d at 128.  "Even if a plaintiff receives correspondence or a call from the defendant, this contact may be insufficient

-15-

to constitute transacting business and to satisfy due process requirements as a matter of New Mexico law.  See Diamond A Cattle Co. v. Broadbent, 84 N.M. 469, 471, 505 P.2d 64, 66 (1973)(holding that, where defendant mailed three payments into the state, there was barely any transaction of business, if any at all, and there were not the requisite minimum contacts to satisfy due process requirements); Fox v. Fox, 103 N.M. 155, 156-57, 703 P.2d 932, 933-34 (Ct. App. 1985)(holding that the sole activity of supporting minor children within the state did not fall within any provision of the long-arm statute, nor did it constitute minimum contacts sufficient to subject non-resident parent to the jurisdiction of New Mexico courts).

To satisfy the requirements of the New Mexico long-arm statute, the court must evaluate a three-prong test: (i) did the defendant commit an act or omission set forth in N.M.S.A. 1978, §38-1-16; (ii) does the plaintiff's cause of action arise out of the alleged acts or omissions; and (iii) does the defendant have sufficient minimum contacts with New Mexico to satisfy due process concerns. See Tercero v. Roman Catholic Diocese, 132 N.M. at 316, 48 P.3d at 54.  New Mexico decisions have consistently recognized that its courts may exercise personal jurisdiction over a nonresident defendant only if sufficient minimum contacts exist between the defendant and the forum state, meaning "the degree to which [the] defendant purposefully initiated activity within the State." Sanchez v. Church of Scientology of Orange County, 115 N.M. 660, 664, 857 P.2d 771, 775 (1993)(internal quotations omitted).  "The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Id. at 664, 857 P.2d 775.

### 2.      Due-Process Limitations.

The minimum-contacts inquiry "protects the defendant from having to defend a lawsuit in a jurisdiction where it has no meaningful contacts and therefore may be unfamiliar with both the

substantive and procedural law." Origins Natural Res., Inc. v. Ben Kotler and LDI, L.L.C., 133

F.Supp.2d 1232, 1235 (D.N.M. 2001)(Black, J.)(citing OMI Holdings, Inc. v. Royal Ins. Co. of

Canada, 149 F.3d at 1090). The minimum contacts standard may be met in two ways. Specific

jurisdiction exists when the defendant "purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." Hanson

v. Denckla, 357 U.S. 235, 253 (1958). The minimum-contacts necessary for specific personal

jurisdiction are established "if the defendant has 'purposefully directed' his activities at residents

of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those

activities." OMI Holdings, Inc. v. Royal Ins. Co. of Canada,149 F.3d 1086, 1091 (10th Cir.

1998)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)). General

jurisdiction, on the other hand, lies when the defendant's contacts with the forum state are so

"continuous and systematic" that the state may exercise personal jurisdiction over the defendant

even if the suit is unrelated to the defendant's contacts with the state. Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n. 9 (1984). To prove general personal jurisdiction,

the plaintiff "need not demonstrate a connection between the defendant's contacts and the cause of

action." Zavala v. El Paso County Hosp. Dist., 143 N.M. 36, 42, 172 P.3d 173, 179 (Ct. App.

2007)(internal quotations omitted and alteration in original). In either case, the court must confirm

that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial

justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). See Zavala v. El

Paso County Hosp. Dist., 143 N.M. at 42, 172 P.3d at 179 (internal quotations omitted). This

determination is made by balancing five factors: (i) the burden on the defendant; (ii) the forum's

interest; (iii) the plaintiff's interest; (iv) the interest in an efficient judicial system; and (v) the

interest in promoting public policy. See id. at 42, 172 P.3d at 179 (citing Burger King Corp. v.

Rudzewicz, 471 U.S. at 467-77).

The internet has brought new considerations to determining minimum contacts. The Courts have found minimum contacts when "a defendant clearly does business over the Internet." Stomp, Inc. v. NeatO, LLC, 61 F.Supp.2d 1074, 1078 (C.D. Cal. 1999). Courts, however, have not found minimum contacts, and have found exercising personal jurisdiction is not appropriate, when use of the Internet involves "[a] passive Web site [sic]" where "a defendant has simply posted information on an Internet Web site [sic] which is accessible to users in foreign jurisdictions." Zippo Mfg. Co. v. Zippo Dot com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Between these two categories are interactive websites which allow a user to exchange information with the host computer. See Patriot Systems, Inc. v. C-Cubed Corp., 21 F. Supp. 2d 1318, 1323-24 (D. Utah 1998)(quoting Zippo Mfg. Co. v. Zippo Dot com, Inc., 952 F. Supp. at 1123-24). In this middle category, whether the "exercise of jurisdiction is appropriate depends upon 'the level of interactivity and commercial nature of the exchange of information that occurs on the Website.'" See Patriot Systems, Inc. v. C-Cubed Corp., 21 F. Supp. 2d at 1323-24.

## FIDUCIARY-SHIELD DOCTRINE

Under the fiduciary-shield doctrine, a corporation's contacts generally cannot be attributed to the officers, directors or employees of the corporation when the individuals' acts were carried out solely in their corporate or representative capacities. See Smith v. Cutler, 504 F. Supp. 2d 1162, 1169 (D.N.M. 2007)(Johnson, J.)(citing Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1527 (10th Cir. 1987)). Jurisdiction over representatives of a corporation cannot be based on jurisdiction over the corporation itself. See Smith v. Cutler, 504 F.Supp.2d at 1169. If the fiduciary-shield doctrine applies, jurisdiction over an officer, director, or employee of a corporation must be based on that individual's personal contacts with the forum state. See Smith v. Cutler, 504

F. Supp. 2d at 1169 (citing <u>Allen v. Toshiba Corp.</u>, 599 F. Supp. 381, 384 (D.N.M.1984) (Campos, J.)).  "The equitable rationale which underlies the fiduciary shield doctrine is that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."  <u>Smith v. Cutler</u>, 504 F.Supp.2d at 1169 (internal quotation omitted).  The protection, however, is not absolute. <u>See id.</u>  An employee of a corporation subject to personal jurisdiction will not be shielded from jurisdiction if he or she is a "primary participant[ ] in [the] alleged wrongdoing intentionally directed" at the forum state, which activities formed the bases of the jurisdiction over the corporation.  <u>Smith v. Cutler</u>, 504 F. Supp. 2d at 1169 (citing <u>Santa Fe Techs., Inc. v. Argus Networks, Inc.</u>, 131 N.M. 772, 788, 42 P.3d 1221, 1237 (Ct. App. 2001)).

New Mexico case law demonstrates that corporate officers, directors, and individuals can be held liable if those individuals participate in the commencement of tortious acts.  In <u>Stinson v. Berry</u>, 123 N.M. 482, 943 P.2d 129 (Ct. App. 1997), an employee died in an explosion while welding a tank, and the family sued the president of the corporation.  <u>See</u> 123 N.M. at 484 ¶¶ 3-6, 343 P.2d at 131.  The district court granted summary judgment in favor of the corporate president on the basis that he was acting at all times within the scope of his corporate duties.  <u>See id.</u> ¶ 6, 943 P.2d at 131.  The Court of Appeals of New Mexico disagreed, and held that "an officer or director of a corporation acting within the scope of his corporate duties may be personally liable for a tort injuring a third party, so long as the director or officer has a duty to that third party."  <u>Id</u>. at 487 ¶ 20, 943 P.2d at 134.  The Court of Appeals further stated:

> It is a basic tenet of corporate law that a corporation is a legal entity, separate from its shareholders, directors, and officers.  Thus, the shareholders, directors and officers are not personally liable for the acts and obligations of the corporation.  Corporate directors cannot be held vicariously liable for the corporation's torts merely by virtue of the office they hold.  However, if an officer or director actively

participates in the commission of the tortious act of the corporation, he will be liable, along with the corporation.  Thus, if the officer or director directed, controlled, approved or ratified the activity that led to the injury, he or she can be held personally liable.

Id. ¶ 17, 943 P.2d at 133 (internal citations omitted).

## LAW ON TRANSFERRING VENUE AND JURISDICTION

Federal law provides that an action may be transferred to a district or division where it might have been brought when it is convenient for parties and witnesses, and is in the interest of justice. See 28 U.S.C. § 1404(a).

Specifically, § 1404 states:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district.  Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

(c) A district court may order any civil action to be tried at any place within the division in which it is pending.

28 U.S.C. § 1404.  In determining whether to transfer a case pursuant to § 1404(a), the court should weigh a number of factors, including:

[(i)] the plaintiff's choice of forum, [(ii)] the locus of the operative facts, [(iii)] the convenience and relative means of the parties, [(iv)] the convenience of witnesses, [(v)] the availability of process to compel the attendance of witnesses, [(vi)] the location of physical evidence, including documents, [(vii)] the relative familiarity of the courts with the applicable law, and [(viii)] the interests of justice, including the interest of trial efficiency.

Hickam v. Janecka, No. CIV 06-1132 JB/RLP, 2007 WL 2219417, at *1 (D.N.M. May 7, 2007)

(Browning, J.)(internal quotations omitted).  The Court has discretion to transfer a matter under 28 U.S.C. § 1404.  See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991)(stating that "[c]ourts therefore enjoy. . . discretion to transfer a cause pursuant to § 1404(a)").

Under 28 U.S.C. § 1404(a), the transferee court must generally apply the state law that would have been applied if there were no transfer.  See Ferens v. John Deere Co., 494 U.S. 516, 523 (1990).  "The rule is settled that when a district court grants a venue change pursuant to 28 U.S.C. § 1404, the transferee court is obligated to apply the law of the state in which the transferor sits." Yoder v. Honeywell Inc., 104 F.3d 1215, 1219 (10th Cir. 1997)(citing Benne v. International Business Machine Corp., 87 F.3d 419, 423 (10th Cir. 1996)).

Pursuant to 28 U.S.C. § 1406(a), a court may, in the interest of justice and sua sponte, resolve jurisdictional and venue defects by transferring a matter under the federal transfer statutes. When a court determines that it lacks personal jurisdiction, and the interests of justice require transfer rather than dismissal, "[t]he correct course . . . is to transfer the action . . . ."  Trujillo v. Willams, 465 F.3d 1210, 1217 (10th Cir. 2006)(quoting Ross v. Colorado Outward Bound Sch., Inc., 822 F.2d 1524, 1527 (10th Cir. 1987)).  In making such a determination the court should consider whether the new action would be time-barred, whether the claims are likely to have merit and whether the original action was filed in good faith.  See Trujillo v. Williams, 465 F.3d 1223 n.16.

## LAW ON CORPORATE REPRESENTATION

D.N.M. LR-Civ 83.7 is consistent with the longstanding rule that corporations may not appear in federal court pro se.[9]  "A corporation . . . must be represented by an attorney authorized

---

[9] See Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-202 (1993)("It has been the law for the better part of two centuries [ . . . ] that a corporation may appear in the federal courts only through licensed counsel."); Osborn v. Bank of the United States, 22 U.S. 738, 830 (1824)("A corporation, it is true, can appear only by attorney, while a natural person may appear for himself.");

to practice before this Court."  D.N.M. L.R.-Civ. 83.7.  It is irrelevant that the person who is seeking to represent the corporation is the corporation's president or shareholder.  See In re K.M.A., Inc. v. Gen. Motors Acceptance Corp., 652 F.2d 398, 399 (5th Cir. 1981)(citing In re Las Colinas Develop. Corp., 585 F.2d 7 (1st Cir. 1978)).  Underlying this rule is the principle that "an unlicensed layperson may only represent himself and not another individual or artificial entity."  Divine Church of God and Christ v. Taxation & Rev. Dept., 116 F.3d 1489, *1 n.1 (10th Cir. 1997)(unpublished). See also In re Schmidt, 122 N.M. 770, 773, 931 P.2d 1386, 1389 (1997)("only two types of legal representation are recognized -- litigants appearing pro se or those appearing through licensed counsel of record.  They may not appear through unlicenced laymen, not even their parents[.]"); Chisholm v. Rueckhaus, 124 N.M. 255, 257, 948 P.2d 707, 709 (Ct. App.), cert. denied, 124 N.M. 268, 949 P.2d 282 (1997)("the authority to represent another party does not equal the authority to practice law on their behalf.").

Policy reasons promote adherence to this principle.  First, it is thought that the rule "protect[s] the court and the public from unscrupulous and irresponsible behavior."  Nat'l Indep. Theater Exhibitors, Inc. v. Buena Vista Distrib. Co., 748 F.2d 602, 609 (11th Cir.1984).  Second, courts strive to preserve the corporation as a legal entity separate from its shareholders.  See In re K.M.A., Inc. v. Gen. Motors Acceptance Corp., 652 F.2d 398, 399 (5th Cir. 1981).

---

Harrison v. Wahatoyas, L.L.C., 253 F.3d 552, 556 (10th Cir. 2001)("As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se."); DeVillers v. Atlas Corp., 360 F.2d 292, 294 (10th Cir.1966)("[A] corporation can appear in a court of record only by an attorney at law."); Flora Constr. Co. v. Fireman's Fund Ins. Co., 307 F.2d 413, 414 (10th Cir.1962)("The rule is well established that a corporation can appear in a court of record only by an attorney at law.").

**LAW ON COMPELLING ARBITRATION PURSUANT TO AGREEMENT**

Both federal and state law embody a strong national and state policy in favor of arbitration. "[A]s a general rule courts, rather than arbitrators, determine issues of substantive arbitrability." Carpenters Dist. Council of Denver and Vicinity v. Brady Corp., 513 F.2d 1, 3 (10th Cir. 1975)(internal quotation marks and citations omitted).

1. **Federal Law.**

The Federal Arbitration Act ("FAA") governs motions to compel arbitration involving contracts related to commerce. See 9 U.S.C. §§ 1-307. Section 2 of the Act provides that an agreement, in writing, to submit a controversy arising out of a contract to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party is aggrieved by the refusal of another to arbitrate under a written agreement, the court, upon petition, "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "In 1925, Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision. Congress designed the FAA to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts.'" Thompson v. Casa Arena Blanca, No. CV 05-01331 JB, Memorandum Opinion and Order at 6, filed September 12, 2006 (Doc. 16)(hereinafter referred to as " Thompson Memorandum Opinion and Order")(quoting Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 474 (1989)(internal citation omitted)). The Supreme Court of the United States has echoed Congress and acknowledged that the FAA reflects a strong public policy in favor of arbitration, especially where there is an agreement by both parties

-23-

to arbitrate any controversies.  See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)("Congress declared a national policy favoring arbitration.").  Federal courts have been unambiguous on this issue, stating that written instruments pertaining to mandatory arbitration are not only enforceable, but are favored.  Indeed, the Supreme Court has construed the FAA to leave "no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

**2.     New Mexico Law.**

"The Uniform Arbitration Act ("UAA") provides that an agreement to submit any controversy arising between the parties to arbitration is 'valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.'"  Thompson Memorandum Opinion and Order at 7 (quoting N.M.S.A. 1978, § 44-7A-7(a)).  If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate.  See N.M.S.A. 1978, § 44-7A-8(a).  "Where the provision for arbitration is disputed, the court's function is to determine whether there is an agreement to arbitrate and to order arbitration where an agreement is found."  Thompson Memorandum Opinion and Order at 7-8 (citing N.M.S.A. 1978 § 44-7A-7(a)).  "Similar to the federal courts' interpretation of the FAA, courts in New Mexico have viewed the UAA as an expression of a public policy favoring arbitration."  Thompson Memorandum Opinion and Order at 8 (citing United Tech. & Res., Inc. v. Dar Al Islam, 115 N.M. 1, 3, 846 P.2d 307, 309 (1993))("The legislature and the courts of New Mexico have expressed a strong policy preference for resolution of disputes by arbitration.")(internal quotation marks omitted).  More specifically, New Mexico courts have construed the legislative purpose of the act as an attempt to reduce the caseload of the courts.  See Bd. of Educ. Taos Mun. Sch. v. Architects, Taos, 103 N.M.

-24-

462, 463, 709 P.2d 184,186 (1985)("A concern for preserving scarce judicial resources lies at the heart of the preference for arbitration."); Dairyland Ins. Co. v. Rose, 92 N.M. 527, 531, 591 P.2d 281, 285 (1979).  "In New Mexico, when the court finds that an arbitration agreement exists, then, in accordance with the UAA, the court has a duty to enforce the provisions of the agreement and order adherence to that arbitration agreement."  Thompson Memorandum Opinion and Order at 8 (citing Bernalillo County Med. Ctr. Employee's Ass'n Local 2370 v. Cancelosi, 92 N.M. 307, 308, 587 P.2d 960, 961 (1978)).  Consistent with this understanding, the Supreme Court of New Mexico has interpreted the UAA to limit the court's role to determining if an arbitration agreement exists and, if so, to order the parties to arbitration.

> When a broad and general arbitration clause is used, as in this case, the court would be very reluctant to interpose itself between the parties and the arbitration which they have agreed upon.  When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters.  Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate.  If so, the court should order arbitration. If not, arbitration should be refused.

K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. 492, 494, 576 P.2d 752, 754 (1978).  In New Mexico, parties entering a contract providing for the resolution of disputes through arbitration are bound by their agreement to arbitrate.  See Christmas v. Cimarron Realty Co., 98 N.M. 330, 332, 648 P.2d 788, 790 (1982).

**3.**     **Existence of a Valid Arbitration Agreement.**

The Supreme Court has noted that "[a]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)(internal citations omitted).  As the United States Court of Appeals for the Tenth Circuit has

noted: "The presumption in favor of arbitration . . . disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. American Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002). In K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. 492, 576 P.2d 752 (1978), the Supreme Court of New Mexico held that a valid arbitration clause existed and that the parties were compelled to arbitrate all disputes when the "subject matter of the dispute has a reasonable relationship to the subject matter of the contract." K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. at 494, 576 P.2d at 754.

> When a broad and general arbitration clause is used . . . the court would be very reluctant to interpose itself between the parties and the arbitration which they have agreed upon. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.

Id. at 494, 576 P.2d at 754.

"While a party may not be compelled to submit a dispute to arbitration unless it has agreed to do so, federal arbitration policy requires that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Altresco Philippines, Inc. v. CMS Generation Co., 111 F.3d 140, 141 (10th Cir. 1997)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25. "Indeed, arbitration should be compelled 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Altresco Philippines, Inc. v. CMS Generation Co., 111 F.3d 140, 141 (10th Cir. 1997) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). Any claim that has a "reasonable factual connection to the [arbitration] contract" is arbitrable. Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1516 (10th Cir. 1995). "An arbitration

clause 'does not extend to all disputes of any sort . . . but only to disputes touching specified provisions of the agreement.'"  Id. at 1516 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 723 F.2d 155, 159 (1st Cir. 1983), aff'd in part and rev'd in part, 473 U.S. 614).

## RULE 73

A Magistrate Judge may be designated to preside over a civil action or proceeding. Specifically, rule 73 provides:

> (a) Trial by Consent. When authorized under 28 U.S.C. § 636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding, including a jury or nonjury trial.  A record must be made in accordance with 28 U.S.C. § 636(c)(5).
>
> (b) Consent Procedure.
>
> (1) In General.  When a magistrate judge has been designated to conduct civil actions or proceedings, the clerk must give the parties written notice of their opportunity to consent under 28 U.S.C. § 636(c).  To signify their consent, the parties must jointly or separately file a statement consenting to the referral.  A district judge or magistrate judge may be informed of a party's response to the clerk's notice only if all parties have consented to the referral.
>
> (2) Reminding the Parties About Consenting.  A district judge, magistrate judge, or other court official may remind the parties of the magistrate judge's availability, but must also advise them that they are free to withhold consent without adverse substantive consequences.

Fed. R. Civ. P. 73.

Similarly, D.N.M. LR-Civ 73.1 allows for the assignment of a Magistrate Judge to civil cases.  In such event, the parties are provided an opportunity to consent or not consent to such assignment.  See D.N.M. LR-Civ 73.1.  The rule does not require the parties to consent to having a Magistrate Judge preside over a matter.

## LAW ON SANCTIONS

Federal courts possess inherent powers necessary "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Chambers v. NASCO, Inc., 501 U.S. 32,

43 (1991)(internal quotation omitted)(quoting <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 630-31 (1962)).  Among those inherent powers is "the ability to fashion an appropriate sanction."  <u>Id.</u>  <u>See</u> <u>Smith v. Nw. Fin. Acceptance, Inc.</u>, 129 F.3d 1408, 1419 (10th Cir.1997)("A federal court possesses the authority to impose . . . sanctions [as part of] its inherent power to control and supervise its own proceedings.")(internal quotations omitted).  Courts have the inherent power to levy sanctions in response to abusive litigation practices.  <u>See</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. at 43; <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 756 (1980).

Rule 11 of the Federal Rules of Civil Procedure provides in relevant part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) In General.  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any

attorney, law firm, or party that violated the rule or is responsible for the violation . . . .

(2) Motion for Sanctions.  A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b) . . . .

. . . .

(6) Requirements for an Order. An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

Fed. R. Civ. P. 11.  Because the exercise of the court's inherent power is not governed by rule or statute, see Chambers v. NASCO, Inc., 501 U.S. at 43, the power "must be exercised with restraint and discretion," Roadway Express v. Piper, 447 U.S. at 764.  Default judgment as a sanction is only appropriate where lesser sanctions have been considered and found inappropriate.  See In re Rains, 946 F.2d 731, 733-34 (10th Cir. 1991); Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir. 1988)(internal citations omitted).

## ANALYSIS

The Defendants move the Court to dismiss Silver's Complaint because the Court lacks personal jurisdiction over them.  In the alternative, the Defendants request the matter be transferred to the United States District Court, Southern District of Florida, Miami Division.  Silver in filing his motions for summary judgment and for writ of praecipe argues that, because the Defendants did not timely respond to the complaint, he is entitled to judgment.  The Defendants assert that they were not properly served and that Silver does not have standing to bring claims on behalf of Santa Fe Capital Group.

## I.      SILVER HAS NOT PROPERLY SERVED THE DEFENDANTS.

Silver contends that, because the Defendants did not file their motion to dismiss within

twenty days of receipt of the summons, he is entitled to summary judgment and judgment by default. The Defendants contend that they were not properly served in that Silver served subpoenas, and not summons, upon them with the Complaint. See Docs. 14-2 and 12. In his pleadings, Silver addresses the means of service, but does not address the Defendants' contention that the summons was improper.

Rule 4(a)(1) sets forth the requirements for a proper summons. On the subpoena that Silver provided, he checked the box which stated: "You are commanded to appear in the United States District court at the place, date, and time specified below to testify in the above case." No specific information was included on these subpoenas. They did not contain a notice to appear and defend, they were not signed and issued by the clerk, and they contained no court seal. No proper summons was provided to the Defendants, and, therefore, service was ineffective. Because service was defective, the Defendants were not obligated to respond to the served documents. Thus, while they responded, they were not untimely.[10]

---

[10] Neither party asserts that the Defendants have waived the defective service of process. Rule 12(h)(1) addresses when some defenses are waived:

**A party waives any defense listed in Rule 12(b)(2) -(5) by:**

    **(A) omitting it from a motion in the circumstances described in Rule 12(g)(2)**; or

    (B) failing to either:

        (i) make it by motion under these rules; or

        (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h)(1)(emphasis added). Rule 12(g)(2) states: "(2) Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party

At the hearing, Silver argued that the merits of his action were more important than the procedures followed and that the clerk had a duty to inform him if more was needed for proper service of process.  Regardless whether he is pro se, Silver is required to comply with the Federal Rules of Civil Procedure with regard to service, and the burden is on him to effectuate service.  He cannot shift his burden to the Court, and he must comply with the requirements of the rules with regard to service of process despite his preference otherwise.

The Court will deny Silver's motion for summary judgment and for writ of praecipe. The issue of the timeliness of the filed motion to dismiss does not preclude the Court from relying on the Defendants' motion to dismiss.  Because there was no proper service, the motion to dismiss was not untimely.

## II.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ALL OF THE DEFENDANTS.

The Defendants assert that they do not have enough minimum contacts with the state of New Mexico to provide the Court with personal jurisdiction over them.  Silver asserts that all of the operative events giving rise to the cause of action occurred in New Mexico and, therefore, the Court has personal jurisdiction over the Defendants.  See Complaint at 1.

Looking at the three-prong test for applicability of New Mexico's long-arm statute, the first two prongs are satisfied with regard to all three Defendants: the Defendants were allegedly transacting business or committing torts which are covered by New Mexico's long-arm statute,

---

but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  It may be that the Defendants have, by not joining their rule 12(b)(2) motion with a rule 12(b)(4) and/or rule 12(b)(5) motion, waived their right to move to dismiss the Complaint for failure to properly serve them.  That possible waiver of the defense does not, however, mean that the improper service is irrelevant.  Because the Defendants were never served with a summons, it is arguable that the deadline rule 12(a)(1)(A)(i) never began to ran.  See Fed. R. Civ. P. 12(a)(i)(A)(i) (stating that a defendant must serve an answer within 20 days after being served with the summons and complaint).

and the causes of action arise out of the alleged transactions or torts.  The third prong, however, is not applicable to all three Defendants.

### A.      THE COURT LACKS PERSONAL JURISDICTION OVER BROWN.

Brown does not have enough contacts with the state of New Mexico to provide the Court with jurisdiction over him.  Brown does not transact business in New Mexico or otherwise conduct activities in New Mexico. He has not traveled to New Mexico and is not domiciled in New Mexico. Brown signed the Agreement on behalf of GTI, but that act does not provide the Court with jurisdiction over him.  Brown signed the Agreement as an officer of GTI and not in his individual capacity.  There are no torts charged against the corporation, only a breach-of-contract claim,[11] therefore the fidiciary-shield doctrine protects Brown.

Silver points to the blog as providing Brown with contacts with New Mexico.  Although Brown purchased the domain "www.DavidSilverSantaFe.com" using Domains by Proxy, Inc.[12] and posted the blog, the blog is closer to an informative website than a commercial website.  No services are offered, and Brown is not collecting revenue from the website.  Brown does not interact with the people who post information on the blog.  Brown, to the Court's knowledge, did not solicit negative postings on the website.  Further, even though people in New Mexico can view the website, the blog

---

[11] Even though the Complaint states that all of the Defendants posted the blog, Silver later states that GTI did not post the blog.  See Response to Motion to Dismiss ¶ 10 at 4.  All of the tort claims asserted by Silver revolve around the blog.

[12] Silver introduced some facts at the hearing which he did not present in his complaint. Unlike a rule 12(b)(6) motion to dismiss for failure to state a claim which requires a court to only consider the facts within the four corners of the complaint, a motion to dismiss under rule 12(b)(2) or (3), which involves jurisdictional issues, is not so limited.  The Court is permitted to consider the facts as present in the complaint, by affidavit and otherwise.  See Land v. Dollar, 330 U.S. 731 (1947), overruled on other grounds, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998).

is not a website that is directed solely at the people of New Mexico. The number of people who can access the website in New Mexico in comparison to those who are able to access the website throughout the world, or even in the United States, according to the statistics that Silver provided at the hearing, is nominal.[13]

Silver points additionally to the name of the blog domain as providing sufficient contacts with New Mexico. While Santa Fe is a city in New Mexico, it is also a city in Florida, albeit not as famous. Many businesses, not in New Mexico, also use Santa Fe in their names. Moreover there are people named David Silver, other than Plaintiff, who do not live in New Mexico. Silver, at the hearing, made some mention to Santa Fe Capital Group being part of the domain name, but the domain name at issue is www.DavidSilverSantaFe.com. The mere act of reserving the domain name does not provide contacts with New Mexico. It is only once one enters this blog that the viewer sees that the contents refer to David Silver and the Santa Fe Capital Group located in Santa Fe, New Mexico. The domain name was purchased through a Scottsdale, Arizona corporation, and not one located in New Mexico. The name of the website does not provide sufficient contacts with New Mexico to provide the Court with jurisdiction over Brown.

Brown has no continuous and systematic contacts with New Mexico. There are not enough contacts between Brown and the state of New Mexico to provide the Court with jurisdiction over him. Because Brown's contacts are insufficient to provide jurisdiction, it would be unreasonable to the Court to require Brown to defend himself in New Mexico. Brown's contacts with the state of New Mexico are so tenuous that it would offend traditional notions of fair play and substantial

---

[13] Silver stated that there are six hundred million internet connections in the United States and three times that number worldwide. Silver further stated that two million people in New Mexico have internet access. Based on these calculations, only one-third of one percent of the people in the United States who have internet and can access the blog are located in New Mexico.

justice to subject him to the Court's jurisdiction.

      **B.**      **THE COURT LACKS PERSONAL JURISDICTION OVER MCMULLEN**.

      McMullen also does not have enough contacts with the state of New Mexico to provide the Court with personal jurisdiction over him.  He has had even less contact with New Mexico than Brown.  McMullen does not transact business in New Mexico or otherwise conduct activities in New Mexico.  He has not traveled to New Mexico and is not domiciled there.  While Silver focuses much of his argument around the blog, Silver has not demonstrated that McMullen was significantly associated with the blog or controlled it in any way.

      McMullen has signed and sent two of the retainer checks, but that does not provide him with sufficient contacts with New Mexico.  The checks were not out of McMullen's personal account but the account of Andros Associates, Inc. and McMullen signed them.[14]  The sending of the retainer checks does not add to the systematic-and-continuous contacts inquiry.  In addition, McMullen has the same fiduciary-shield protection as Brown.

      Moreover, McMullen sending electronic mail transmissions expressing his disappointment, see Response to Motion to Dismiss ¶ 9, at 4, Silver sending a book to McMullen, and McMullen emailing a thank you for the book also do not provide sufficient contacts with New Mexico.

      McMullen has no continuous and systematic contacts with New Mexico.  There are not enough contacts between McMullen and the state of New Mexico to provide the Court with jurisdiction over him. Because McMullen's contacts are insufficient to provide jurisdiction, it would

---

[14] Check 368 dated February 4, 2009, see Response to Motion to Dismiss at 13, was in the amount of $1,250.00 and from the account of Andros Associates, Inc.  The check was made payable to Santa Fe Capital Group. Check 371 dated February 17, 2009, see Response to Motion to Dismiss at 12, was in the amount of $1,373.25 and from the account of Andros Associates, Inc.  The check was also made payable to Santa Fe Capital Group.

be unreasonable for the Court to require McMullen to defend himself in New Mexico.  His contacts with the state of New Mexico are so tenuous that it would offend traditional notions of fair play and substantial justice to subject him to the Court's jurisdiction.

### C.    THE COURT HAS PERSONAL JURISDICTION OVER GTI.

GTI is not a New Mexico corporation and does not maintain an office in New Mexico.  GTI is not now, and has not ever been, registered to do business in New Mexico.  GTI does not regularly solicit or transact business in New Mexico or otherwise conduct activities in New Mexico.  It owns no property in New Mexico and has no business operations of any kind in New Mexico.

Silver asserts that GTI has continuous and systematic contacts with New Mexico.  Silver does not make many distinctions in his complaint among the acts of the specific Defendants.  Later documents provide some clarity.  For example, Silver states that GTI did not post the blog.  See Response to Motion to Dismiss ¶ 10 at 4.  Because Silver acknowledges that GTI was not the poster of the blog, none of the assertions of contacts based on that blog would apply to GTI.

Silver represents that GTI approached him regarding funding their corporation.  At the hearing, Silver expanded upon this assertion, and stated that a finder contacted him regarding GTI and that he told the finder to have GTI contact him.  In response, Brown, on behalf of GTI contacted Silver.  This situation does not definitively show that GTI was the initiator of the contact between the two parties; however, for the purposes of the motion to dismiss, and without evidence to the contrary, the Court will assume that Silver is correct and that he was not the initiator of the contact.

Other relevant factors to which Silver pointed at the hearing as giving indication of systematic and continuous contacts by GTI included: (i) the company brochure and business plan being sent to New Mexico; (ii) substantive communication between the two parties regarding the funding memorandum; (iii) the sending of due-diligence materials to Silver in New Mexico; (iv)

Silver editing the memorandum in New Mexico and sending the information to investors from New Mexico; (v) the failure of GTI to send the shares of stock to New Mexico; and (vi) collection letters Defendants sent Silver regarding $6,000.00.[15] See Applied Capital, Inc. v. Gibson, No. CV 05-98, 2007 U.S. Dist. LEXIS 97743, at *36 (D.N.M. Sept. 30, 2007)(Browning, J.)(finding long-arm jurisdiction where the defendants intended to defraud the plaintiff in New Mexico by sending a series of facsimiles, references, telephone calls, and documents into the state in hopes of inducing the plaintiff to send them money); Russey v. Rankin, 837 F. Supp. 1103, 1105 (D.N.M. 1993)(Conway, J.)(finding that minimum contacts for New Mexico long-arm jurisdiction was established when California defendants knowingly sent a demand letter to a New Mexico resident). The Court concludes that these contacts, with the fact that GTI initiated the contact with a client in New Mexico, were sufficient to provide the Court with personal jurisdiction over GTI.

The Court does not discuss individually several factors of Silver's rationale that Defendants had continuous-and-systematic contacts with New Mexico as they blur in with the other factors that Silver mentions, or the Court has disregarded them as inapplicable to showing continuous and systematic contact. For example, an angry investor of GTI calling Silver would not fairly link Defendants to jurisdiction in New Mexico; the Court has disregarded this factor. Similarly, Silver's drafting and signing of the Agreement in New Mexico does not do much to connect the Defendants with New Mexico. Silver also references that the selling of shares to him in exchange for his services ensured his engagement. There is no evidence to indicate, however, that the shares were additional consideration for Silver. In fact, it was Santa Fe Capital Group who sent letters to GTI requesting the shares, and the letters stated that the shares should be made out to "Northern Hills,

---

[15] Although Silver did not present these letters to the Court, the Defendants do not dispute their existence. The Court does not believe that it should properly disregard this factor and concludes that it counts toward exercising personal jurisdiction over Silver.

Inc. Defined Benefit Plan," and not to Silver.  See Complaint at 9-18. The assertion has little

relevance to Silver's contact argument.

### III.    SILVER DOES NOT HAVE STANDING TO BRING SUIT ON BEHALF OF NORTHERN HILLS, INC. DBA SANTA FE CAPITAL GROUP.

Even though the Court would have personal jurisdiction over GTI with regard to the

breach-of-contract claim, the Court cannot properly hear this claim, as Silver lacks standing to bring

a claim for breach of a contract to which he is not a party.[16] The Tenth Circuit has stated that "the

general rule [is] that one who is not a party to a contract lacks standing to sue for its breach, absent

a special status such as that of a third-party beneficiary, corporate successor, or assignee of a

contracting party.  See Bevill Co. v. Sprint/United Mgmt., 77 Fed. App'x 461, 462 (10th Cir. 2003).

Silver has not alleged that he is a third-party beneficiary, corporate successor, or assignee of Santa

Fe Capital Group.  Silver appears to erroneously believes that he, individually, entered into a

contract with GTI for services.[17]  The Agreement, on its face, however, is between GTI and Santa

Fe Capital Group.  See Complaint at 7.  Silver was the officer who signed the Agreement on behalf

of Santa Fe Capital Group, and he was person who prepared the Agreement, but, he is not a party

to it.  He, therefore, has no right to individually pursue a breach-of-contract claim under the

Agreement.

Moreover, if Santa Fe Capital Group wants to pursue a breach-of-contract claim based on

the Agreement, it will need to be represented by an attorney.  Pursuant to the local rules, a

corporation may not represent itself pro se and must be represented by a licensed attorney.  See

---

[16] The Defendants asserted their motion to dismiss under rule 12(b)(2) and (3).  In the body of their accompanying memorandum, however, the Defendants also move for the Court to dismiss the breach-of-contract claim pursuant to D.N.M. L.R.-Civ. 83.7.

[17] In his response to the motion to dismiss, Silver states "Defendants hired Silver, not his firm . . . ."  Response to Motion to Dismiss ¶ 18, at 8.

D.N.M. LR-Civ 83.7 ("A corporation . . . must be represented by an attorney authorized to practice before this Court."). Accordingly, Silver cannot represent Santa Fe Capital Group.

Silver, therefore, does not have standing to bring the breach of contract claim as an individual or on behalf of the corporation. The Court will therefore dismiss the breach-of-contract claim. And because Silver has no other claims against GTI, the Court will dismiss the case as to GTI.

The dismissal of Silver's claims will be without prejudice to Silver filing suit against the Defendants in a court that would have personal jurisdiction over the Defendants and subject-matter jurisdiction over the claims. Because the Defendants have not been properly served and the Court lacks personal jurisdiction over the claims Silver has asserted against the Defendants, the Court does not believe it should properly consider a transfer of venue under § 1404, which gives the Court discretion to transfer venue for the convenience of the parties and witnesses, in the interest of justice. See 28 U.S.C. § 1404(a). The Court could, sua sponte, transfer the matter to a forum with personal jurisdiction and the proper venue under § 1406, which permits the Court to transfer a case filed in the wrong venue if it is in the interest of justice, see 28 U.S.C. § 1406(a); however, the Court does not find such a transfer appropriate. Aside from the lack of service issue, the claims were not all brought by the proper party, and there is an arbitration clause to consider. Dismissal, without prejudice, is the better result to this matter at this time.

If Santa Fe Capital Group chooses to pursue a claim, it is important to note that the corporations agreed in the Agreement that any dispute pertaining to the Agreement should be submitted to arbitration and that Florida law shall govern. Specifically, the Agreement states:

> In the event of any dispute between [GTI] and [Santa Fe Capital Group], [GTI] and [Santa Fe Capital Group] agree that it shall be resolved through arbitration in Miami, FL under the regulations of the American Arbitration Association, within

-38-

ninety (90) days following termination of this Agreement.  Any award rendered shall be final and conclusive upon the parties.  This Agreement shall be construed under the laws of the State of Florida.

Complaint at 8.  The FAA recognizes the validity of arbitration clauses.  Santa Fe Capital Group drafted the Agreement, which contained the arbitration language.  Silver has stated: "The contract between the parties demonstrates a meeting of the minds, and that the contract calls for arbitration in Florida, if the dispute is between GTI and [Santa Fe Capital Group]."  Doc. 9 ¶10 at 4.  In the pleadings, both parties acknowledged the arbitration requirement; there does not appear to be any dispute that the arbitration clause was an agreed-upon provision in the Agreement and meant to bind the parties.  The corporations must avail themselves of arbitration before seeking redress in the courts.  Of course, the arbitration agreement is only binding upon the parties who executed it, the corporations.  The individuals themselves are not bound to arbitrate their disputes.

## IV.    <u>SANCTIONS ARE NOT APPROPRIATE</u>.

Silver requests that the Court impose sanctions against the Defendants and their counsel for their failure to agree to have a Magistrate Judge hear this matter.  The rules do not, however, require the Defendants to agree to a Magistrate Judge presiding over their matter, and, indeed, both the Federal Rules of Civil Procedure and the consent form indicate that there will be no adverse consequences for failing to consent.  See Fed. R. Civ. P. 73(b)(2)("A district judge . . . must also advise [parties] that they are free to withhold consent without adverse substantive consequences."); Consent/Refusal to Consent to Proceed Before a United States Magistrate Judge form at 1 ("Consent is strictly voluntary, and a party is free to withhold consent without adverse consequences.").  Accordingly, sanctioning the Defendants would be inappropriate.

In response to Silver's motion, the Defendants requested that the Court order Silver to pay them their reasonable expenses, including attorney's fees, incurred in defending against the motion

for sanctions. <u>See</u> Doc. 21 at 2. While Silver could have taken the time to better familiarize himself with the Federal Rules of Civil Procedure before filing the motion, the Court does not believe that it should impose sanctions on Silver, who is presently pro se.  The Court is not minimizing the fact that Silver did not adequately research his argument before filing his motion; however, the Court does not believe that Silver's motion for sanctions was so inexcusably reckless as to warrant sanctions.  Additionally, although the Defendants might have been inconvenienced by the need to defend the motion, they did not use a significant amount of resources in preparing their defense. Accordingly, the Court will deny the motion for sanctions and the Defendants' request for expenses. Because the Court has dismissed the Complaint, it will deny all remaining motions as moot.

**IT IS ORDERED** that (i) the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively to Transfer Venue (Doc. 6), is granted in part and denied in part; (ii) Plaintiff's Motion for Summary Judgment (Doc. 11), is denied; (iii) Plaintiff's Writ of Precipae [sic] (Doc. 17), is denied; (iv) the Motion to Impose Sanctions on Defendants and Opposing Counsel, (Doc. 19), is denied; (v) the Motion for Preliminary Injunction (Doc. 22), is denied as moot; and (vi) the Motion to Add an Additional Defendant to the Complaint (Doc. 23), is denied as moot. The Plaintiff's Complaint is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel of Record:*

David Silver
Espanola, New Mexico

  *Plaintiff Pro Se*

-40-

Kristofer C. Knutson
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico

   *Attorneys for the Defendants*